UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

GALE MILLER,

                        Plaintiff,

   -against-

TOWN OF HEMPSTEAD, MICHAEL ZAPPOLA,
*individually and in his official capacity*, and
ANTHONY SANTINO, *individually and in his
official capacity*,

                    Defendants.

------------------------------------------------------------------x

**MEMORANDUM
AND ORDER**

17-cv-7330 (SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

      Presently before the Court in this employment litigation, pursuant to 28 U.S.C. § 636(c), *see* Docket Entry ("DE") [31][1], is the Defendants' Town of Hempstead (the "Town"), Michael Zappola ("Zappola"), and Anthony Santino ("Santino" and together with the Town and Zappola, "Defendants") motion for summary judgment ("Defendants' Motion" or "Def. Mot."), pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), DE [48].

      By way of Complaint filed on December 15, 2017, Plaintiff *pro se* Gale Miller ("Miller" or "Plaintiff") commenced this action against Defendants for: (i) retaliation in violation of the First Amendment based on political affiliation and related comments against all Defendants pursuant to 42 U.S.C. § 1983; (ii) various constitutional violations against all Defendants pursuant to *Monell v. Dept. of Soc.*

---

[1] The Honorable Judge Kiyo A. Matsumoto presided over this action until it was reassigned to this Court on March 15, 2020. *See* Case Reassignment, dated March 15, 2020.

*Serv. of City of New York*, 436 U.S. 658, 658-59, 98 S. Ct. 2018, 2019-20 (1978);  (iii) discrimination on the basis of disability in violation of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 *et seq.* and New York State Executive Law § 290 against all Defendants; and (iv) aiding and abetting discrimination and retaliation under New York State Executive Law § 296 against Zappola.   *See* Complaint ("Compl."), DE [1], at 8-10.[2]   For the reasons set forth below, the Court grants Defendants' Motion in its entirety and dismisses the Complaint with prejudice.

## I.   BACKGROUND

### A. The Parties

The following facts are taken from the parties' pleadings, declarations, exhibits and Defendants' Local Rule 56.1 statement.[3]   Except where indicated, these facts are not in dispute.

Plaintiff is a New York resident and a 1986 graduate of Long Beach High School, located in Nassau County.   *See* Defendants' 56.1 Statement of Undisputed Facts ("Def. 56.1"), DE [50], ¶ 1.   Miller was born with a "mild form of cerebral palsy," which has admittedly had little effect on her normal life activities other than limiting her ability to operate a motor vehicle.   *Id.* at ¶¶ 14-15, 23.

The Town is a municipal corporation and political subdivision of New York State.   *Id.* at ¶ 2.   Santino is the Town's former Supervisor, while Zappola is the

---

[2] While Miller is currently proceeding *pro se*, she was represented by retained counsel from the filing of the Complaint until January 7, 2020, *see* Compl., DE [28], and court-appointed counsel from September 24 through November 10, 2020. *See* DEs [38], [42]. The Court permitted counsel to withdraw due to the breakdown of the attorney-client relationship. *See* DEs [28], [42].

[3] Miller did not object or otherwise respond to Defendants' 56.1 Statement.

former Deputy Commissioner of the Town's Parks Department (the "Parks Department"). *Id.* at ¶¶ 11-12.

## B. Plaintiff's Initial Parks Department Employment

Plaintiff began working for the Parks Department as a seasonal/part-time worker in 1989, shortly after her 1988 graduation from Nassau County Community College. *Id.* at ¶¶ 3-4. Miller did not list any disability, illness, or physical limitation on her required pre-employment medical examination records or employment application. *Id.* at ¶¶ 19-20. Upon her hiring, Plaintiff received copies of the Parks Department's anti-harassment and anti-discrimination policies, both of which identified representatives of the Town whom employees could contact to report violative conduct. *See id.* at ¶¶ 6-8. In or about May 1990, shortly after her hiring, Miller provided the Town with a statement of her medical history, which again did not list her disability. *Id.* at ¶¶ 17-18. It is undisputed that, before 2017, Miller did not inform the Town that she had cerebral palsy. *Id.* at ¶ 21.

Miller became a full-time employee of the Parks Department in September 1998, and is currently employed by the Parks Department as a Recreation Aide. *Id.* at ¶¶ 5, 9. In this job, Plaintiff assists "in various recreation activities or in the care of a recreation facility", including "set[ting] up apparatus[es] and maintain[ing] facilities, assign[ing] facilities to groups and organizations[,] maintain[ing] basic record keeping system[s,] prepar[ing] reports," and "perform[ing] related duties as required." *Id.* at ¶ 10.

### C. **Plaintiff's Transfers Between Parks**

Since beginning her Parks Department employment, Plaintiff has worked at several parks throughout the Town, including Lido Beach, Shell Creek, Baldwin and Hewlett Point. *Id.* at ¶ 22. Because she is prohibited from operating a motor vehicle, Miller generally utilizes public transportation to get to work, or is driven to work by her mother, Rosemary Miller. *Id.* at ¶ 24. Plaintiff was assigned to Lido Beach Park for approximately six months before becoming a full-time Parks Department employee in 1998, and was assigned to Shell Creek Park upon her promotion. *Id.* at ¶¶ 25-26. After approximately six months at Shell Creek Park – which is a five-minute drive from Miller's home and hosts recreation activities throughout the year – Plaintiff was transferred back to Lido Beach Park. *Id.* at ¶¶27-30.

Miller was transferred back to Shell Creek Park in or about September 2009, and in May 2010, was transferred to Harbor Isle Park for the summer. *Id.* at ¶¶ 31-32. Plaintiff alleges that in or about September 2009, one of her former co-workers made disparaging remarks about Miller's affinity for former Senator Ted Kennedy, and called her a "bleeding heart liberal." Compl. ¶¶ 11-13. In October 2010, at the conclusion of the summer recreation season, Plaintiff returned to Shell Creek Park, and was again transferred to Harbor Isle Park for the 2011 summer recreation season. Def. 56.1 ¶¶ 33-34.

In November 2011, Miller was transferred to Hewlett Point Park where, other than a brief stint in Baldwin Park described below, she has remained. *Id.* at ¶¶ 35-36. Hewlett Point Park, which is "about twenty minutes away" from Plaintiff's house,

only hosts recreation activities during the summer months, and has a community room that is "open and available throughout the year to the public and used by various community groups and organizations and hosts activities such as arts and crafts." Def. 56.1 ¶¶ 37-38, 43. Because Hewlett Point Park is closed during the winter, Miller performed general office work in the Hewlett Point Park office during those months and performed the "normal and regular duties of a Recreation Aide" at the commencement of the spring season. *Id.* at ¶¶ 40-41.

### D. **Plaintiff's Request for a Promotion**

In or about November 2015, Plaintiff submitted an "Application for Change in Title," seeking to have her title changed to "receptionist/laborer grade 9," because she had "been doing receptionist type duties" since her transfer to Hewlett Point Park in 2011. *Id.* at ¶ 44. In response to her application, in or about December 2015, the Town's Civil Service Commission advised Miller and the Parks Department that by performing the duties of a receptionist, Plaintiff was performing work that was "out-of-title" – work not specified in her assigned title's job description. *Id.* at ¶45. Because she was working out-of-title while at Hewlett Point Park, Miller was transferred back to Baldwin Park's recreation building in or about December 2015. *Id.* at ¶ 46. In her deposition, Plaintiff acknowledged that she did not believe that this transfer was motivated by, or in retaliation for, her political affiliation. *See* Transcript of August 13, 2019 Deposition of Gale Miller, DE [48-4], ("Tr.") 117:22-25.

In or about February 2016, while working at Baldwin Park, Plaintiff requested a transfer back to Hewlett Point Park. Def. 56.1 ¶¶47, 49. Shortly thereafter, Miller

met with Susan Jacobs, Esq., of the Office of the Town Attorney, to discuss Plaintiff's request. *Id.* at ¶ 50. After this meeting, Miller was transferred back to Hewlett Point Park. *Id.* at ¶¶ 51-52. Once transferred back, Plaintiff was not permitted to work in the office or answer phones, as such duties were out-of-title. *Id.* at ¶ 53. Plaintiff alleges – without providing a timeframe – that multiple Parks Department employees around her seniority level, Bruce Tepper, Anthony Dudick, Barbara Page, Barbara Finger, and Miles Sefchek, and a non-Parks Department employee who worked on Santino's political campaign, William Kouvatsos, were promoted and given grade raises due to their ties to the local Republican Party. Compl. ¶¶ 44-45.

### E. **Plaintiff's Attempted Civil Service Exams**

As a civil service employee of the Town, Miller was bound by the applicable collective bargaining agreement and received a pay increase each year for thirteen years. Def. 56.1 ¶ 55. In or about April 2013, Plaintiff received a letter from Zappola informing her that she could not be granted further salary increases because she had reached the upper limit of her salary range. *Id.* at ¶ 56. This letter explained that Miller should consider "taking any civil service exams that [she] may qualify for," because "[c]ivil service exams are a possible avenue to grade and step increase." *Id.*

Prior to this letter, Miller took – and failed – civil service exams for the following positions: (i) Clerk, in or about May 1996; (ii) Clerk Typist I, in or about October 1996; and (iii) Recreation Leader I, on or about February 23, 2002. *Id.* at ¶¶ 59-62. In or about June 2008, Plaintiff applied to take the civil service exam for the Clerk III position, but was disqualified because she lacked the necessary experiential

6

and supervisory prerequisites. *Id.* at ¶¶ 63-65. Miller did not sit for another civil service exam after 2008. *Id.* at ¶ 66. In or about October 2015, the Town increased the qualifications and prerequisites – known as "revising the grade" – for the position of receptionist from grade 7 to grade 9. *Id.* at ¶ 67.

### F. EEOC Charge

On or about November 22, 2016, Miller filed a charge for disability discrimination with the Equal Opportunity Employment Commission (the "EEOC"). *See* Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment ("Plaintiff's Response" or "Pl. Resp."), DE [52], at 47. On May 11, 2016, the EEOC issued a Dismissal and Notice of Rights. *See id.* at 43.

Plaintiff claims that, in or about May 2017, after the filing of her EEOC Charge and the election of then-President Trump, she was teased by a co-worker for her Democratic leanings and Hillary Clinton-affiliated bumper stickers on her mother's car. *See* Compl. ¶¶ 36-37.

### G. Procedural History

As set forth above, Plaintiff commenced this action against Defendants by way of Complaint dated December 15, 2017, which asserted claims for: (i) First Amendment retaliation based on political affiliation and related comments against all Defendants pursuant to 42 U.S.C. § 1983; (ii) various constitutional violations against all Defendants pursuant to *Monell*; (iii) discrimination on the basis of disability in violation of the ADA and New York State Executive Law § 290 against all Defendants; and (iv) aiding and abetting discrimination and retaliation under

7

New York State Executive Law § 296 against Zappola. *See* Compl. at 8-10. Defendants filed their Answer to the Complaint on May 7, 2018. *See* DE [11]. Discovery commenced following the parties' August 21, 2018 initial conference before this Court. *See* DE [14].

On February 17, 2021, Defendants moved for summary judgment, *see* Def. Mot., which Plaintiff opposes. *See generally* Pl. Resp. For the reasons set forth below, the Court grants Defendants' Motion in its entirety and dismisses Plaintiff's Complaint with prejudice.

## II.  LEGAL STANDARDS

### A.  <u>Fed. R. Civ. P. 56</u>

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of establishing that there are no issues of material fact such that summary judgment is appropriate. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004). In deciding the motion, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment

should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts…. [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (internal quotation omitted); *see also Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party").

In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986); *see also Artis v. Valls*, No. 9:10-cv-427, 2012 WL 4380921, at *6, n. 10 (N.D.N.Y. Sept. 25, 2012) ("It is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment.").

## B. *Pro Se* Pleadings

It is well-established that pleadings by *pro se* plaintiffs are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S. Ct. 173, 176 (1980); *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) ("A document filed *pro se* is to be liberally construed, and a

*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal citations omitted).  The Second Circuit has held that a court reviewing a *pro se* pleading must "construe the complaint broadly, and interpret it to raise the strongest arguments that it suggests." *Weixel v. Bd. of Educ. of the City of New York*, 287 F.3d 138, 146 (2d Cir. 2002) (internal alterations omitted); *see also Rene v. Citibank N.A.*, 32 F. Supp. 2d 539, 541 (E.D.N.Y. 1999) (holding that a court must "make reasonable allowances so that…*pro se* plaintiffs do not forfeit their rights by virtue of their lack of legal training").  However, the court "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist." *Ogunmokun v. Am. Educ. Servs./PHEAA*, No. 12-cv-4403, 2014 WL 4724707, at *3 (E.D.N.Y. Sept. 23, 2014) (quoting *Molina v. New York*, 956 F. Supp. 257, 259 (E.D.N.Y. 1995)).

## III.    DISCUSSION

Applying the standards set forth above, and for the reasons set forth below, the Court grants Defendants' Motion in its entirety and dismisses the Complaint with prejudice.

### A.  Plaintiff's First Amendment Retaliation Claim

Initially, Miller's First Amendment Section 1983 claim is based on the argument that she was retaliated against because of her comments over the years to coworkers regarding her political views, her self-professed affiliation with the Democratic Party, and her "refusal to join to local Republican Club."  Compl. ¶¶ 10, 50-51.  Specifically, Plaintiff alleges that she was:  (i) transferred; (ii) denied a

promotion or pay upgrade; (iii) forbidden from "sitting in the office" at Hewlett Point Park and "answering the phones" at that park's office; and (iv) "assigned to work at a booth [at Hewlett Point Park] checking season passes," because of her political beliefs and related comments. Compl. ¶¶ 20, 24, 27, 39, 42-43. Defendants seek summary judgment on this cause of action, arguing that Miller has failed "to establish a *prima facie* case that [Defendants'] alleged retaliatory conduct had even the slightest connection to her political affiliation." Def. Mem. at 5.

 42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State… subjects, or causes to be subjected, any citizen of the United States…to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured….

42 U.S.C. § 1983. Although Section 1983 itself does not create substantive rights, it does provide "a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). To prevail on a claim arising under 42 U.S.C. § 1983, a plaintiff must demonstrate: "(1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state[-]law." *Hawkins v. Nassau Cnty. Corr. Facility*, 781 F. Supp. 2d 107, 111 (E.D.N.Y. 2011) (citing 42 U.S.C. § 1983); *see also Dubin v. County of Nassau*, 277 F. Supp. 3d 366, 384 (E.D.N.Y. 2017) (quoting *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010)).

 In the Second Circuit, a claim for First Amendment retaliation depends on the factual context from which it stems. *See Williams v. Town of Greenburgh*, 535 F.3d

71, 76 (2d Cir. 2008).  Where, as here, a public employee brings a retaliation claim, the plaintiff must prove that:  "(1) [she] engaged in constitutionally protected speech because [she] spoke as [a] citizen[ ] on a matter of public concern; (2) [she] suffered an adverse employment action; and (3) the speech was a motivating factor in the adverse employment decision."  *Skehan v. Vill. of Mamaroneck*, 465 F.3d 96, 106 (2d Cir. 2006), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008) (internal citations omitted).  "[T]he causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action."  *Kohutka v. Town of Hempstead*, 994 F. Supp. 2d 305, 318 (E.D.N.Y. 2014) (quoting *Anemone v. Metropolitan Transp. Auth.*, 410 F. Supp. 2d 255, 267 (S.D.N.Y. 2006)).  "In determining 'whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play,' the Supreme Court analyzes 'whether an intent to convey a *particularized message* was present and whether the *likelihood was great* that the message would be understood by those who viewed it.'"  *Toussie v. County of Suffolk*, 806 F. Supp. 2d 558, 577 (E.D.N.Y. 2011) (quoting *Young v. N.Y.C. Transit Auth.*, 903 F.2d 146, 153 (2d Cir. 1990) (emphasis in *Young*)); *see also Spence v. Washington*, 418 U.S. 405, 410-11, 94 S. Ct. 2727, 2730 (1974).

Speech touches upon a matter of public concern when it relates to an area of political, social, or other concern relevant to the community.  *See Connick v. Myers*, 461 U.S. 138, 148, 103 S. Ct. 1684, 1689-90 (1983) (explaining that if the plaintiff's speech did not touch upon a matter of public concern, it was "unnecessary for [the

court] to scrutinize the reasons for [his] discharge"); *see also Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2008) (finding employee's speech unprotected because "[i]t did not seek to advance a public purpose").  In the public employee context, an individual may be motivated by a personal grievance, but this does not necessarily foreclose the possibility that she is also speaking out on a matter of public concern.  *See Sousa v. Roque*, 578 F.3d 164, 173 (2d Cir. 2009).  For example, even when interwoven with personal employment issues, if a public employee is speaking out about and seeking redress for matters that relate to public corruption, such actions have been found to touch upon matters of public concern.  *See Golodner v. Berliner*, 770 F.3d 196, 205 (2d Cir. 2014) (recognizing that the "exposure of official misconduct...is generally of great consequence to the public") (internal quotations and citations omitted).

Applying these standards, the Court concludes that Miller has failed to establish a *prima facie* case for retaliation under the First Amendment, and grants Defendants' Motion as to this claim.  Here, Defendants concede that: (i) Plaintiff's speech was protected; and (2) only Miller's transfers to Harbor Isle Park and the Town's denial of her applications for promotion constituted adverse actions, *see* Def. Mem. at 6.  Nevertheless, the Court concludes that Defendants are entitled to summary judgment on this claim because Miller has failed to provide any evidence whatsoever of a causal connection between her comments regarding her political affiliation and any alleged adverse employment action.

1.  <u>No Causal Connection Between Political Affiliation and Transfers</u>

A review of the facts reflects that, even if Plaintiff's transfers to Harbor Isle Park are considered adverse employment actions, *see Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004), Miller has failed to establish a causal connection between her political affiliation or comments and her transfers, rendering her claim defective. *See Morrison v. Johnson*, No. 1:01-cv-636, 2006 WL 2811802, at *17 (N.D.N.Y. Sept. 28, 2006). Indeed, the causal connection between a plaintiff's protected speech and alleged adverse employment action must lead a court to conclude that the speech "was a motivating factor in the determination," and this may be established "either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence or retaliatory animus." *Kohutka v. Town of Hempstead*, 994 F. Supp. 2d 305, 319-20 (E.D.N.Y. 2014) (quoting *Morris v. Lindau*, 196 F.3d 102, 109-10 (2d Cir. 1999)).

The undisputed evidence, however, establishes that the Town's actions with respect to Miller's employment were a result of the Town's staffing needs at individual parks, and entirely unrelated to Miller's political affiliation. Rather, in or about May 2010 and 2011, Plaintiff was temporarily transferred to Harbor Isle Park for each respective summer recreation season. *See* Tr. 68:4-9, 69:13-18, 69:24-25, 70:2-33. Miller's argument that her transfers to Harbor Isle Park were motivated by her political affiliation is belied by her transfers from Harbor Isle Park to Shell Creek Park in 2010 and from Harbor Isle Park to Hewlett Point Park in November 2011.

*See* Tr. 69:19-22; *see also Contes v. Parr*, 345 F. Supp. 2d 372, 383 (S.D.N.Y. 2004); *Garcia v. Yonkers Bd. of Educ.*, No. 15-cv-0767, 2018 WL 4007648, at *7 (S.D.N.Y. Aug. 21, 2018) ("Where, as here, there is an intervening causal event that occurred between the protected activity and the allegedly retaliatory discharge the causal connection that relied on temporal proximity may be defeated.") (internal quotations omitted).

Further, "as a matter of law in this Circuit, retaliation will not be inferred when a long period of time passes between the exercise of a First Amendment right" and the "imposition of the allegedly retaliatory adverse employment decision." *Contes*, 345 F. Supp. 2d at 383; *see also James v. Newsweek*, No. 96-cv-0393, 1999 WL 796173, at *15 (S.D.N.Y. Sept. 30, 1999) (finding a four-month gap "between the protected activity and the adverse actions" to be "insufficient to establish causation."). Here, Miller's alleged protected conduct, comments regarding her political affiliation, occurred in or about September 2009. Compl. ¶ 11. The alleged retaliation, Miller's temporary summer transfers to Harbor Isle Park, however, occurred in the summers of 2010 and 2011, nine months and a year and nine months later. *See* Tr. 68:4-9, 69:13-18, 69:24-25, 70:2-33. The Court concludes that: (i) the time lapse between any of Plaintiff's alleged comments regarding her political affiliation and Defendants' alleged retaliatory conduct is too long for Miller to establish the necessary causation; and (ii) there is no evidence of a connection between her political affiliation and transfers to Harbor Isle Park in any event.

## 2. No Causal Connection Between Political Affiliation and Lack of Promotion

Likewise, the Court concludes that Defendants are entitled to summary judgment as to Plaintiff's First Amendment retaliation claim because Miller has failed to establish a causal connection between her political speech and the Town's alleged refusal to increase her salary or promote her.

A review of the undisputed evidence reveals that Plaintiff's requests for a "higher title and pay grade," *see* Compl. ¶ 20, were limited by the civil service law, and not by her supervisors' retaliatory intent. Here, neither Zappola nor Santino possessed the authority to singlehandedly promote Miller or increase her pay. Rather, a civil service employee's employment level and pay grade are governed by civil service law and the local union's collective bargaining agreement. Zappola informed Plaintiff of this constraint in an April 15, 2013 letter, where he encouraged Miller to take "any Civil Service exams that [she] may qualify for," because passage of such exams "are a possible avenue to a grade and step increase." Tr. 101:21-104:3. Prior to Zappola's April 2013 letter, in fact, Miller applied to take multiple civil service exams, including exams for Clerk in 1996, Recreation Leader in 2002, and Clerk III in 2008. *See* Tr. 45:6-14, 104:20-105:7. Plaintiff failed the 1996 and 2002 exams and, as a result of her lacking necessary prerequisites, was not permitted to take the 2008 exam. *See* Tr. 105:4-7. Since 2008, Miller has neither applied for nor taken another civil service exam, *see* Tr. 105:8-19, and there is nothing in the record to suggest that any denial of a promotion or pay increase was motivated by retaliatory animus. *See Nicosia v. Town of Hempstead*, No. 16-cv-1176, 2017 WL 9485669, at *7

16

(E.D.N.Y. June 14, 2017), *report and recommendation adopted*, No. 16-cv-1176, 2017 WL 3769246 (Aug. 28, 2017) ('A *prima facie* failure-to-promote claim normally requires that a plaintiff allege not only that he was qualified for an actual position, but also that he was rejected upon applying for it.").

Miller further claims that she was passed over for a promotion in favor of Barbara Finger ("Finger") and Barbara Pepe ("Pepe"), two Parks Department employees who were allegedly involved with the local Republican club. *See* Compl. ¶¶ 34, 43-44; Tr. 135:3-18.  Again, however, not only is the record devoid of any evidence to support her claim, but Plaintiff's deposition testimony shows that unlike Miller, Finger and Pepe were each pay-grade 7 Receptionists who, along with every other grade 7 employee, were elevated to grade 9 in 2015 due to a Town-initiated change in grade for the Receptionist title. *See* Tr. 13:7-40.  This undisputed evidence establishes that Miller's political beliefs played no role in her coworkers' promotional or wage decisions.

Moreover, Plaintiff's allegations that she was denied "routine promotions and pay upgrades" in favor of Town employees Bruce Tepper ("Tepper") and Anthony Dudick ("Dudick") due to their political leanings, *see* Compl. ¶¶ 43-44, is similarly refuted by the undisputed evidence.  Indeed, since becoming full-time Laborers I in 2002, neither Tepper nor Dudick have been promoted or received a pay increase.  *See* Tr. 162-64.  Further, Miller's claim that William Kouvatsos ("Kouvatsos") – a non-Parks Department employee – was promoted over, and paid more than Plaintiff because he worked on Santino's political campaign, *see* Compl. ¶ 45, is irrelevant to

her retaliation claim because Kouvatsos was not a Parks Department employee, but worked in a political role. *See Alberti v. County of Nassau*, 393 F. Supp. 2d 151, 171 (E.D.N.Y. 2005). Based on this evidence, the Court concludes that Miller has failed to establish that her political affiliation or related comments were "motivating factor[s]" in any adverse employment action she experienced. *See Kelly v. Huntington Union Free Sch. Dist.*, No.09-cv-2101, 2012 WL 1077677, at \*17 (E.D.N.Y. Mar. 30, 2012).[4]

   3.   <u>No Causal Connection Between Political Affiliation and Other Allegedly Adverse Employment Actions</u>

The Court further concludes that Defendants are entitled to summary judgment as to Plaintiff's First Amendment retaliation claim because Miller has failed to establish a causal connection between her additional allegedly adverse employment experiences and her political affiliation and beliefs.

A review of the undisputed evidence once again undercuts Plaintiff's contention that she was: (i) forbidden from "sitting in the office" at Hewlett Point Park and "answering the phones" at that park's office; or (ii) "assigned to work at a booth [at Hewlett Point Park] checking season passes" because of her political beliefs and related comments. Compl. ¶¶ 27, 39. Indeed, in or about December 2015, Plaintiff submitted an "Application for Change in Title," by which she sought to have her title changed to "receptionist/laborer grade 9," because she had performed "receptionist type duties" during her first placement at Hewlett Point Park in 2011

---

[4] Outside of a single reference in the Complaint, neither party submits any evidence regarding Miles Schefek, for comparative purposes. *See generally* Def. Mot.; Pl. Resp. The Court does not rely on this lack of evidence regarding this individual in reaching its conclusion.

and subsequently. Def. 56.1 ¶ 44. In response, the Town's Civil Service Commission advised Miller and the Parks Department that such duties were "out-of-title" for Plaintiff's job as a Recreation Aide. *Id.* at ¶ 45. Because she was working out-of-title while at Hewlett Point Park, Miller was transferred back to Baldwin Park's recreation building in or about December 2015. *Id.* at ¶ 46. During her deposition, Miller acknowledged that she had performed out-of-title work during her earlier stint at Hewlett Point Park, and that she would be forbidden from performing any out-of-title work during her return to Hewlett Point Park in February 2016. *See* Tr. 126:8-128:23. Based on this evidence, the Court concludes that Plaintiff has failed to establish a causal connection between her work and task assignments at Hewlett Point Park and her political affiliation.

Moreover, there is nothing in the record to support Miller's claim that she was assigned to work in a booth at Hewlett Point Park "checking season passes" because of her political beliefs and related comments. During her deposition, Plaintiff testified that she was assigned to the booth at the entrance of the park to check seasonal admission passes "for a few hours" on one day in or about July 2017, and was relieved by another Parks Department employee as soon as she complained that the booth was too hot. *See* Tr. 151:11-17. Moreover, Plaintiff's failure to provide any evidence that she was assigned to the booth on that day as a result of her political beliefs or affiliation, *see generally* Pl. Resp., is fatal to Miller's First Amendment retaliation claim. *See Nicosia*, 2017 WL 9485669, at *9. Based on this evidence, the Court concludes that Plaintiff has failed to establish any connection between her

19

additional allegedly adverse employment experiences and political affiliation or related comments, and grants Defendants' summary judgment motion as to Miller's First Amendment retaliation claim.

### 4. Claims Against Zappola and Santino Fail as a Matter of Law

In the Section 1983 context, where a plaintiff names both a municipal entity and an official employed by that entity in that person's official capacity, district courts have "consistently dismissed the official capacity claims as redundant." *Gazzola v. County of Nassau*, No. 16-cv-0909, 2016 WL 6068138, at *4 (E.D.N.Y. Oct. 13, 2016) (citations omitted); *see also Medrano v. Margiotta*, No. 15-cv-3097, 2017 WL 886986, at *5 (E.D.N.Y. February 16, 2017) ("To the extent Plaintiff[] assert[s] claims against the individual defendants in their official capacities, these claims must fail because they are duplicative of the claims asserted by Plaintiffs against [the Town]."). Accordingly, because Miller's First Amendment claim fails on the merits as against the Town, it necessarily fails against Zappola and Santino in their official capacities.

As to Zappola's and Santino's individual liability, the Court concludes that neither the Complaint nor evidentiary record shows that Santino or Zappola were personally involved in any employment decision related to Miller. *See Gazzola*, 2016 WL 6068138, at *5 (A plaintiff asserting a Section 1983 claim against a supervisory official in his individual capacity "must sufficiently plead that the supervisor was personally involved in the alleged constitutional deprivation."); *Rivera v. Metro. Transit Auth.*, 750 F. Supp. 2d 456, 462 (S.D.N.Y. 2010) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite'" to a damages

award under Section 1983."). Without any evidence that either Santino or Zappola directly participated in the alleged employment violations, failed to remedy the alleged violations, created a policy or custom under which the violation occurred or were grossly negligent in supervising those responsible for the alleged violation, the Court concludes that Plaintiff's First Amendment retaliation claim fails as a matter of law as to them individually, and dismisses it with prejudice.

Moreover, as to the claims directed against Zappola and Santino individually, qualified immunity protects federal and state officials from both civil damages and "unnecessary and burdensome discovery or trial proceedings[,]" *Spavone v. New York State Dep't of Corr. Services*, 719 F.3d 127, 134 (2013) (quoting *Crawford–El v. Britton,* 523 U.S. 574, 598, 118 S. Ct. 1584, 1596 (1998)), "where the officials' conduct was not in violation of a 'clearly established' constitutional right." *Sudler v. City of New York,* 689 F.3d 159, 174 (2d Cir. 2012), *cert. denied,* 569 U.S. 1018, 133 S. Ct. 2777 (2013); *see also Walker v. Schult,* 717 F.3d 119, 125 (2d Cir. 2013) ("A federal official is entitled to qualified immunity from suit for money damages unless the plaintiff shows that the official violated a statutory or constitutional right, and that the right was 'clearly established' at the time of the challenged conduct."). Qualified immunity extends to circumstances where an official's conduct" does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," and applies "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Spavone,* 719 F.3d at 135 (quoting *Pearson v. Callahan,* 555 U.S. 223,

21

231, 129 S. Ct. 808, 815 (2009)). "So long as a defendant has an objectively reasonable belief that his actions are lawful, he is entitled to qualified immunity." *Spavone,* 719 F.3d at 135 (internal quotations and citation omitted).

Applying these standards, the Court concludes that Zappola and Santino are shielded from Section 1983 liability by qualified immunity because – as reflected in the above analysis – the record lacks any evidence that Zappola or Santino violated Plaintiff's constitutional rights. Accordingly, Defendants' motion for summary judgment on this alternate basis is granted as to them, and this claim is again dismissed with prejudice.

### B. **Plaintiff's *Monell* Liability Claim[5]**

Defendants next seek summary judgment as to Plaintiff's claim for liability pursuant to *Monell*, 436 U.S. at 658-59, 98 S. Ct. at 2019-20. *See* Def. Mem. at 16. Based on a liberal reading of the Complaint and Plaintiff's Response, Miller's *Monell* claim appears to be premised on the theory that the Town: (1) had a custom or practice of making employment decisions based on an employee's support and/or opposition to a certain political party or affiliation; and/or (2) failed to properly train its employees that one's political affiliation should have no role in her assignments and pay level. *See* Compl. ¶¶ 10, 16-17, 60.

Under *Monell*, municipalities and other local governmental entities may be held liable under 42 U.S.C. § 1983 for constitutional violations caused by the

---

[5] As Plaintiff alleges *Monell* liability as a separate cause of action, *see* Compl. ¶ 60, and not as part of any of her other claims, the Court addresses Defendants' alleged *Monell* liability apart from its First Amendment analysis.

municipality through an official policy or custom.  *See* 436 U.S. at 658-59, 98 S. Ct. at 2019-20.  Although Plaintiff's *Monell* cause of action is alleged against all Defendants, *Monell* applies only to municipal entities.  *See id.* at 691, 98 S. Ct. 2018 at 2036; *see also Patterson v. County. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004).  The "policy or custom" element may be established by demonstrating:  (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.  *See Kucharczyk v. Westchester Cnty.*, 95 F. Supp. 3d 529, 538-39 (S.D.N.Y. 2015) (citing *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)); *see also Jones v. Westchester Cnty. Dep't of Corr. Med. Dep't*, 557 F. Supp. 2d 408, 419 (S.D.N.Y. 2008).

To establish a *Monell* claim based on a failure to train, a plaintiff must show: (1) that "a policymaker [of the municipality] knows 'to a moral certainty' that her employees will confront a given situation"; (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "that the wrong choice by the [municipal] employee will frequently cause the

deprivation of a citizen's constitutional rights." *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992). A municipality is deliberately indifferent where it fails to act when it has "actual or constructive notice," generally from "[a] pattern of similar constitutional violations by untrained employees," that its training program is "deficient." *Hernandez v. United States*, 939 F.3d 191, 207 (2d Cir. 2019). A plaintiff, therefore, "must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences." *Id.* As the Supreme Court explained in *Connick v. Thompson*, a "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of a failure to train." 563 U.S. 51, 62, 131 S. Ct. 1350, 1360 (2011).

Applying the deliberate indifference standard that Miller invokes, "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury." *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (citation omitted); *see also Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the City."); *Wiltshire v. Williams*, No. 10-cv-6947, 2012 WL 899383, at *10 (S.D.N.Y. Mar. 16, 2012) (noting that after demonstrating the existence of a municipal policy or custom, "a plaintiff must establish a causal connection – an affirmative link – between the policy and the deprivation of his constitutional rights" (internal quotation marks omitted)).

In accordance with the above standards, Defendants' Motion is granted as to Plaintiff's *Monell* claim because Miller has failed to provide evidence to support a claim of any unlawful policy, practice or custom.

### 1. Failure to Prove Existence of a Formal Policy

Plaintiff alleges that she was victimized by the Town's policy of making employment decisions based on employees' political beliefs. *See generally* Compl. Under this policy, Miller alleges that she was, among other things: (i) transferred; (ii) denied a promotion or pay upgrade; (iii) forbidden from sitting in Hewlett Point Park's office or answering the phones; and (iv) "assigned to work at a booth [at Hewlett Point Park] checking season passes," because of her political beliefs. *Id.* at ¶¶ 20, 24, 27, 39, 42-43. The undisputed evidence before the Court, however, fails to support such a conclusion.

Initially, the Court notes that there is no evidence in the record to suggest that such a policy or practice existed, let alone that it was widespread. Further, the record contains no evidence that the Town deliberately retaliated against employees based on their political affiliations, and Miller fails to identify any other Town employees who were transferred, denied a pay increase, precluded from office work, or assigned undesirable tasks based on their alleged refusal to support a certain political party. *See Lockwood v. Town of Hempstead*, No. 16-cv-3756, 2017 WL 9485687, at *10 (E.D.N.Y. Feb. 24, 2017) ("[A]s Plaintiff has pointed to no other comparators who were promoted or denied a promotion to permanent status based upon their financial

support, Plaintiff has failed to allege that such policy existed."); *Nicosia*, 2017 WL 3769246, at *3.

Additionally, while Miller testified that she reported several instances of politically motivated harassment to Zappola, she provides no evidence or examples to support this conclusory allegation. *See* Compl. ¶¶ 11-15; Tr. 51-65. Plaintiff's *Monell* claim further fails because she "has not presented evidence or support demonstrating the required regularity and frequency of conduct by a municipality for *Monell* liability to attach." *Miller v. City of Harvey*, No. 13-cv-9257, 2015 WL 5144476, at *4 (N.D. Ill. Aug. 31, 2015).

### 2. Failure to Show that Policymaker Caused Miller's Alleged Injury

While Miller next appears to claim that Zappola and Santino, as final policymakers, orchestrated a policy of reprisal against Plaintiff, a Recreation Aide, *see generally* Compl., the Court again concludes that summary judgment in Defendants' favor is appropriate because the record is completely devoid of any evidence to support this allegation. *See Rosu v. City of New York*, No. 11-cv-5437, 2012 WL 6582534, at *5 (S.D.N.Y. Dec. 13, 2012) ("In order for an individual to be subject to Section 1983 liability in his or her official capacity, that individual must have had personal involvement in [the] alleged constitutional deprivations [as] a prerequisite to an award of damages.") (internal quotations omitted).

Indeed, Miller has put forth no evidence that either Zappola or Santino can be considered a policymaker under *Monell*, possesses final policymaking authority, or "had any direct involvement with, knowledge, or responsibility for the alleged

26

deprivation of [Plaintiff's] civil rights…." *Jeffers v. City of New York*, No. 15-cv-2965, 2015 WL 3915306, at *2 (E.D.N.Y. Jun. 25, 2015).  Accordingly, the Court concludes that Miller has failed to establish a *Monell* violation based upon the acts of an individual with policymaking authority.  *See Wingate v. City of New York*, No. 14-cv-4063, 2018 WL 3863439, at *10 (E.D.N.Y. Aug. 14, 2018).

### 3.  Failure to Prove Existence of a Widespread Practice

Miller next fails to establish that "Defendants' custom or practice of discriminating and/or retaliating against individuals" based on constitutionally-protected forms of speech "were so persistent and widespread that they constitute[d] the constructive acquiescence of policymakers."  Compl. ¶ 60(a).

In order to establish *Monell* liability based upon a "persistent and widespread" practice by a subordinate municipal employee or employees, a plaintiff must show "sufficient instances of tolerant awareness by supervisors of abusive conduct to support an inference that they had a policy, custom or usage of acquiescence in such abuse." *Jones v. Town of East Haven*, 691 F.3d 72, 82 (2d Cir. 2012); *see also Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) (acknowledging that inaction may lead to municipal liability for the "persistent failure to discipline subordinates who violate civil rights" as it can "give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of *Monell*").  It is only at that point that, although not expressly authorized, the unconstitutional conduct is so persistent and widespread that it can constitute a custom or usage of which a supervising policymaker must have been aware. *See Lucente v. County of Suffolk*,

980 F.3d 284, 297-98 (2d Cir. 2020) (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403-04, 117 S. Ct. 1382, 1388 (1997)).

Applying these standards, not only has Miller failed to prove that any unconstitutional policy or practice existed, but she has again failed to put forth any evidence that such a policy or practice was so widespread as to put her supervisors on notice regarding its existence.  Further, it is undisputed that Plaintiff has failed to identify any other Parks Department employees who were aware of, or even affected, by this allegedly widespread policy of retaliation based on one's political affiliation.  *See Deferio v. City of Syracuse*, 770 F. App'x. 587, 591 (2d Cir. 2019) (rejecting plaintiff's invocation of two potentially constitutionally violative incidents sufficient to establish a "persistent or widespread practice that would rise to the level of a custom for purposes of *Monell* liability."); *Slater v. County of Orange*, 345 F. Supp. 3d 378, 393-94 (S.D.N.Y. 2018).

### 4.   Failure to Show that Policymakers Failed to Properly Train or Supervise

"A plaintiff may demonstrate the existence of a policy or custom where the municipality, demonstrating conscious and deliberate indifference, fails to adequately train its employees…. However, this requires more than 'the mere assertion that a municipality has…a custom or policy.'" *Smith v. Doe*, No. 15-cv-0245, 2016 WL 7046803, at *3 (E.D.N.Y. Oct. 31, 2016) (citations omitted); *Dawson v. Westchester Cnty.*, No. 18-cv-7790, 2019 WL 3408899, at *4 (S.D.N.Y. July 29, 2019).

Here, Miller's allegation that "[i]nadequate training/supervision was likely to result in the discrimination, retaliation, and/or harassment that policymakers can

reasonably be said to have been deliberately indifferent to the need to provide better training and supervision[,]" *see* Compl. ¶ 60, is wholly unsupported by the evidentiary record and, without more regarding any training deficiency, is insufficient to establish a *Monell* claim sufficient to defeat Defendants' Motion. *See Vail v. City of New York*, 68 F. Supp. 3d 412, 431 (S.D.N.Y. 2014) ("[B]ecause Plaintiff provides no additional detail beyond the general assertion that the City failed to train its employees, his allegation is insufficient to state a claim.").

The record also lacks any evidence that Santino's or Zappola's alleged conduct "is part of a recurring pattern, or has previously been the subject of complaints." *Brewster v. Nassau Cnty.*, 349 F. Supp. 2d 540, 549 (E.D.N.Y. 2004); *Moran v. County of Suffolk*, No. 11-cv-3704, 2015 WL 1321685, at *10 (E.D.N.Y. Mar. 24, 2015) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."). Indeed, there is no evidence that the Town knew of a single incident – let alone a pattern – of an employee being transferred, denied a promotion, or assigned undesirable tasks due to her political affiliation. *See Lawrence v. City of Rochester*, No. 09-cv-6078, 2015 WL 510048, at *7 (W.D.N.Y. Feb. 6, 2015) ("Deliberate indifference may be inferred from the failure to train or supervise based on proof of repeated complaints of civil rights violations that 'are followed by no meaningful attempt on the part of the municipality to investigate or to forestall.'").

Based on the above, the Court concludes that, because Miller has failed to establish that Santino's or Zappola's alleged conduct is part of a recurring pattern, or

has previously been the subject of complaints, she has failed to make out a *prima facie* case based on a failure to train or supervise.  Accordingly, because Miller has failed to offer sufficient evidence to establish *Monell* liability, Defendants are entitled to summary judgment on this claim.

## C. <u>Plaintiff's Disability Discrimination Claim</u>

Further, Defendants seek summary judgment as to Plaintiff's discrimination claim brought under the ADA and New York Executive Law § 290, contending that the Town's lack of notice regarding Miller's cerebral palsy diagnosis, and the fact that the Town granted Plaintiff's only request for an accommodation in any event, render her claim untenable.  *See* Def. Mem. at 12-13.

To establish a *prima facie* case of discrimination under the ADA, an employee bears the burden of demonstrating that:  (1) she was an "individual who has a disability" within the meaning of the statute; (2) the employer had notice of her disability; (3) she could perform the essential functions of the job with reasonable accommodation; and (4) the employer refused to make such an accommodation.  *See Brizzi v. Utica Mut. Ins. Co.*, No. 18-cv-4973, 2021 WL 1163112, at *7 (E.D.N.Y. Mar. 26, 2021) (quoting *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 (2d Cir. 2000)).  The Second Circuit has held that a plaintiff must also "show 'the *connections* between:  (1) the failure to accommodate a disability; (2) the performance deficiencies; and (3) the adverse employment action.'"  *Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019) (quoting *Parker v. Sony Pictures Entm't, Inc.*, 260 F.3d 100, 108 (2d Cir. 2001) (emphasis in *Parker*)).  Claims brought under the ADA and New York

Executive Law § 290 are analyzed under the same standards. *See Dipinto v. Westchester Cnty.*, No. 18-cv-793, 2019 WL 4142493, at *6 (S.D.N.Y. Aug. 30, 2019) ("New York State disability discrimination claims are governed by the same legal standards as federal ADA claims.") (internal citations omitted); *see also Cornetta v. Town of Highlands*, 434 F. Supp. 3d 171, 185 (S.D.N.Y. 2020); *McGrath v. Arroyo*, No. 17-cv-1461, 2019 WL 3754459, at *13 (E.D.N.Y. Aug. 8, 2019).

Applying these standards, the Court concludes that Plaintiff has failed to establish a *prima facie* case for discrimination under the ADA or § 290, and grants Defendants' Motion as to this claim. Initially, while: (i) Miller's cerebral palsy is considered a disability under the ADA, *see Bussa v. St. John's University*, No. 18-cv-4623, 2019 WL 136641, at *4 (E.D.N.Y. Jan. 8, 2019); and (ii) Defendants concede that the Town's failure to promote Plaintiff "constitutes an adverse employment action," *see* Def. Mem. at 12-13, the Court concludes that Defendants are nevertheless entitled to summary judgment because Miller has failed to submit any evidence that the Town: (i) was aware of Plaintiff's cerebral palsy diagnosis; and (ii) failed to provide Miller with a reasonable accommodation, sufficient to establish an issue of material fact and defeat Defendants' Motion.

### 1. The Town's Lack of Notice of Plaintiff's Cerebral Palsy Diagnosis

At her August 13, 2019 deposition, where she was represented by counsel, Miller admitted that, prior to February 2017, she did not inform the Town, or any of her supervisors, that she had a disability or had been born with cerebral palsy. *See* Tr. 35:6-19, 68:25, 69:2-4. Further, Plaintiff has submitted no evidence whatsoever

that the Town: (i) knew that Miller had any type of disability; (ii) regarded Plaintiff as having any disability; or (iii) declined to promote Miller based on any disability.

Based on this lack of evidence, the Court concludes that Plaintiff has failed to establish an issue of fact as to whether she was discriminated against due to her disability. *See Chiari v. New York Racing Ass'n Inc.*, 972 F. Supp. 2d 346, 363-64 (E.D.N.Y. 2013); *Matya v. Dexter Corp.*, No. 97-cv-763C, 2006 WL 931870, at *8 (W.D.N.Y. Apr. 11, 2006) ("At the very least, for a plaintiff to show that [she] suffered an adverse employment action because of [her] disability, the employer must have knowledge of the alleged disability."); *Barnett v. Revere Smelting & Ref Corp.*, 67 F. Supp. 2d 378, 392 (S.D.N.Y. 1999) ("At a minimum, for there to be causation, the employer must have knowledge of the disability.").

### 2. The Town Provided Plaintiff with a Reasonable Accommodation

Notwithstanding the above, the Court further concludes that Defendants are entitled to summary judgment as to Miller's ADA and § 290 discrimination claim because Plaintiff has also failed to prove that the Town failed to provide her with a reasonable accommodation. *See McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013) ("An employer may also violate the ADA by failing to provide a reasonable accommodation."). Specifically, Miller contends that the Town failed to accommodate her disability when it transferred her to Baldwin Park knowing that it would be difficult for her to travel to and from this location due to her inability to drive and Baldwin Park's distance from public transportation, and allegedly ignored her request to transfer to another park closer to her home. *See* Compl. ¶ 22; Tr. 38:8-23.

32

Plaintiff's contention is unsupported by the evidence.  In fact, Miller does not dispute that, in or about February 2016, while working at Baldwin Park, Plaintiff met with Susan Jacobs, Esq., of the Office of the Town Attorney, and requested to be moved back to Hewlett Point Park, which was accessible via public transit.  *See* Tr. 37:14-38:14.  Shortly after this meeting, Miller's request was granted, and she was transferred back to Hewlett Point Park.  *See id.*  In short, Plaintiff received the only accommodation that she ever sought.

Applying these standards, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's disability discrimination cause of action because Defendant had no notice of Miller's disability and Plaintiff was granted the only accommodation she requested.

### D. <u>Plaintiff's Aiding and Abetting Discrimination Claim</u>

Finally, Zappola seeks summary judgment in his favor on Miller's aiding and abetting ADA and § 290 discrimination, and First Amendment retaliation causes of action, which Plaintiff brings only against him.  The New York Executive Law prohibits "aid[ing], abet[ting], incit[ing], compel[ling] or coerc[ing]" any unlawful acts of discrimination and retaliation.  *See McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (quoting N.Y. Exec. Law § 296(6)).  To state a claim for aiding and abetting discrimination or retaliation, a plaintiff must plead that the defendant "actually participate[d]" in the employer's unlawful conduct.  *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 337 (S.D.N.Y. 2020) (internal citations and quotations omitted); *see also Ahmad v. New York City Health and*

*Hosps. Corp.*, No. 20-cv-675, 2021 WL 1225875, at *13 (S.D.N.Y. Mar. 31, 2021) (Finding that "a co-worker who actually participate[d] in the conduct giving rise to a discrimination claim [could] be held liable under the NYSHRL even though that co-worker lacked the authority to either hire or fire the plaintiff.") (internal citations omitted). Further, aiding and abetting liability may be conferred upon an individual whose actions gave rise to the underlying claim. *See Torres v. Cent. Ave. Nissan, Inc.*, No. 18-cv-2919, 2021 WL 1227098, at *7 (S.D.N.Y. Mar. 31, 2021) (finding that "a defendant who actually participates in the conduct that gives rise to a [disability] discrimination claim" may be held personally liable under § 296); *Pusepa v. Annucci*, No. 17-cv-1765, 2019 WL 690678, at *16 (S.D.N.Y. Feb. 19, 2019) (dismissing plaintiff's claim for aiding and abetting First Amendment retaliation against a defendant who "merely watched" but did not participate in, the alleged retaliation.).

In light of these standards, the Court concludes that Plaintiff has failed to establish a *prima facie* case of aiding and abetting discrimination and retaliation against Zappola. Notwithstanding that a claim for aiding and abetting cannot survive summary judgment when its predicate causes of action have been dismissed at the summary judgment stage, *see Bigio v. Coca-Cola Co.*, 675 F.3d 163, 175 (2d Cir. 2012), Miller has again provided no evidence to support her claim that Zappola – Plaintiff's alleged supervisor – "actually participated" in the Town's purported discrimination and retaliation against her. *Farmer*, 473 F. Supp. 3d at 337. Accordingly, the Court concludes that summary judgment in Zappola's favor is proper, and dismisses Plaintiff's aiding and abetting claim with prejudice.

## IV.    CONCLUSION

For the reasons set forth above, the Court grants Defendants' Motion in its entirety and dismisses the Complaint with prejudice.

Dated:        Central Islip, New York
              September 2, 2021

                                    **SO ORDERED**

                                    /s/ Steven I. Locke
                                    STEVEN I. LOCKE
                                    United States Magistrate Judge